UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| SCOTT CANNON, individually and as the personal representative of the estate of Blaise Cannon,<br><br>  Plaintiff,<br><br>  v.<br><br>BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC.,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 23-cv-10950-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                         **November 7, 2023**

**I.      Introduction**

Plaintiff Scott Cannon ("Cannon"), individually and as the personal representative of the estate of Blaise Cannon ("Blaise"), has filed this lawsuit against Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS") alleging various state law claims arising from BCBS's denial of health benefits. D. 1-1. BCBS has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). D. 7. For the reasons stated below, the Court DENIES the motion.

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct

1

a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Although the "consideration of documents not attached to the complaint, or not expressly incorporated therein" is generally improper under Rule 12(b)(6), "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1993). The Court may review the "relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted).

**III.   Factual Background and Procedural History**

Unless otherwise indicated, the following facts are drawn from the allegations in Cannon's complaint. D. 1-1.

As alleged by Cannon, BCBS issued Blaise a "policy of health insurance" (the "Policy"), which remained in force as of March of 2020. Id. ¶¶ 7–8. That month, Blaise sought coverage for a Wixela Inhub inhaler to treat his asthma. Id. ¶ 9. BCBS denied coverage pursuant the Policy.

Id. ¶ 10. Blaise subsequently died due to complications related to his asthma on March 31, 2020. Id. ¶ 12.

Cannon instituted this action in Middlesex Superior Court alleging six state law claims: declaratory judgment with regard to BCBS (Count I); breach of contract (Count II); bad faith (Count III); wrongful death (Count IV); punitive damages (Count V); and loss of consortium (Count VI). D. 1-1 ¶¶ 14–44. BCBS removed the action to this Court, D. 1, and moved to dismiss the complaint shortly thereafter. D. 7. The Court heard the parties on the pending motion and, while reserving on the motion, ordered a brief period of discovery limited to the BCBS policy issued to Blaise and related correspondence. D. 25. Following limited discovery, the parties submitted supplemental memoranda. See D. 27; D. 28.

**IV.   Discussion**

BCBS argues that Cannon's complaint should be dismissed because his state law claims are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") and that Cannon has failed to state a claim under ERISA. D. 14 at 1–2. Central to BCBS's argument are exhibits to its motion to dismiss, which purportedly include the Policy cited in the complaint. See D. 8-1. Cannon responds that the Court cannot consider these exhibits on a 12(b)(6) motion and insists that they are "incomplete and unauthenticated." D. 12 at 1.

Although a court may consider some documents on a 12(b)(6) motion, it is still incumbent on the defendant to present sufficient indicia of authenticity as to any proffered exhibits. For example, in Prouty v. Hartford Life & Accident Ins., 997 F. Supp. 2d 85, 86, 88–89 (D. Mass. 2014), two defendants, a former employer and an insurer, moved to dismiss a complaint on the grounds that the plaintiff had failed to state a claim under ERISA; in support of their motion, the

3

defendants produced a copy of the summary plan description ("SPD") referenced in the plaintiff's complaint. The plaintiff argued that the SPD could not be considered because they "were not properly authenticated as true copies of the SPD." Id. at 89. The defendants responded that the documents had been properly authenticated by an employee of the insurer, pointing to a declaration confirming same. Id. The court concluded that "[t]he SPD produced by Defendants ha[d] sufficient indicia of authenticity to permit its consideration in connection with these motions to dismiss." Id.

Similarly, in Blay v. Zipcar, 716 F. Supp. 2d 115, 118 (D. Mass. 2010), a plaintiff moved to strike documents submitted with defendant Zipcar's motion to dismiss, arguing the documents were "not authenticated." Zipcar responded that, "as is common practice, it [ ] submitted a lawyer's sworn affidavit verifying the documents and even attache[d] two affidavits from Zipcar employees confirming the documents' authenticity." Id. The court denied the plaintiff's motion to strike. Id.

Here, the complaint alleges that BCBS "provided a policy of health insurance to Decedent, Blaise Cannon," D. 1-1 ¶ 7; that "[t]he Policy was in good standing and in force as of March 2020," id. ¶ 8; that "Blaise Cannon sought coverage . . . under the Policy," id. ¶ 9; and that "Blaise Cannon was denied coverage . . . under the Policy." Id. ¶10. Cannon's extensive reference to, and reliance upon, Blaise's health insurance policy—which was not attached to the complaint—opened the door for BCBS to submit exhibits concerning same for the Court's consideration on a 12(b)(6) motion. See Watterson, 987 F.2d at 3.

This does not relieve BCBS of the obligation to ensure that any documents submitted to the Court for consideration possess sufficient indicia of authenticity. See Prouty, 997 F. Supp. 2d at 89; Blay, 716 F. Supp. 2d at 118. Having reviewed the exhibits submitted by BCBS, the Court

4

cannot conclude on the present record that they possess sufficient indicia of authenticity to warrant consideration at this stage. BCBS has submitted an assortment of documents in support of its motion to dismiss, including what BCBS's counsel describes as excerpts of the Policy issued to Blaise as the domestic partner of an employee of a company called SessionM Inc. ("SessionM"). D. 14 at 2; see D. 8-1 at 1–32. Specifically, BCBS has produced (1) a subscriber certificate detailing plan benefits for individuals receiving their health insurance through SessionM, D. 8-1 at 1–24; (2) BCBS's "Pharmacy Medical Policy" on asthma and chronic obstructive pulmonary disease, id. at 25–29; and (3) a "Premium Account Agreement" which "describes the terms of the arrangement between Blue Cross and Blue Shield of Massachusetts, Inc. . . . and the Account to provide health care benefits for the Account's covered employees and their covered dependents." [1] D. 8-1 at 30, 30–32.

While these documents appear to pertain to a health insurance policy available to SessionM employees and their domestic partners, BCBS's assertion is more specific, i.e., that Blaise subscribed to the same as the domestic partner of a SessionM employee. D. 14 at 2. None of these exhibits contain information linking the proffered policy documents or SessionM specifically to Blaise. See D. 8-1 at 1–32. Any such connection arises from a statement in BCBS counsel's memorandum of law that "Blaise obtained coverage through the Plan because his domestic partner was an employee of SessionM and a participant in the Plan." D. 14 at 2. To support this assertion, BCBS cites an attachment to the group health insurance plan issued to SessionM titled "Domestic Partner Eligibility." See 8-1 at 24. But all this document shows is that a subscriber of the proffered

---

[1] BCBS also submitted correspondence concerning Blaise's claim for the Wixela Inhub inhaler. D. 8-1 at 33–52. As these documents seem to consist of claim correspondence not referenced in the complaint, the Court will not consider them here on a Rule 12(b)(6) motion. See Watterson, 987 F.2d at 3.

health plan "may enroll a domestic partner for coverage under his or her membership," not that Blaise's health insurance policy—i.e., the Policy referenced in the complaint—was issued pursuant to the terms of the SessionM plan.[2]  See id.; see also Setterlund v. Potter, 597 F. Supp. 2d 167, 171 (D. Mass. 2008) (explaining how, in the summary judgment context, "the appearance of authenticity is not enough" and that "it is not sufficient for [ ] counsel merely to assert, in the memorandum of law . . . , that the documents are authentic").

The exhibits produced by BCBS with its supplemental memorandum do not allay the Court's concerns as to the gaps in the record.  See D. 27-1; D. 27-2; D. 27-3; D. 27-4.  According to BCBS, these exhibits are "screen shots of its member and enrollment systems showing that Cannon was insured solely as a dependent of a SessionM Inc. [ ] employee under the SessionM group health plan." D. 27 at 2.  Only two of these screenshots list Blaise Cannon's name, however.  See D. 27-3; D. 27-4 at 1.  And while they note Blaise's status as a "dependent" or "domestic partner," the screenshots' connection to SessionM is not apparent from the face of the documents.  See D. 27-3; D. 27-4 at 1.

Cannon also raises a number of questions concerning these screenshots.  According to an affidavit by Cannon's counsel, these documents were produced in response to discovery requests seeking information as to the BCBS policy issued to Blaise.  D. 29-1 ¶ 2.  One of these screenshots, D. 27-1, appears to note an entry related to subscriber benefits on March 17, 2020 under the heading "Activity History."  Cannon's counsel asked BCBS whether there were additional documents concerning this and other entries depicted in the screenshot; BCBS's counsel responded, "[t]here are no records relating to the entries in this screen shot . . . .  The entry for

---

[2] Relatedly, the Court notes that the excerpts of the Premium Account Agreement, produced by BCBS, do not expressly name SessionM as the counterparty to the agreement. See D. 8-1 at 30–32.

3/17/20 reflects the date that the insured's benefits were updated for the annual renewal date for the group plan of 4/1/20." D. 29-1 ¶¶ 3–4, 6.

Had BCBS submitted an affidavit or declaration explaining the significance of the proffered policy documents and verifying that they concerned the health insurance policy through which Blaise sought coverage for the Wixela Inhub inhaler, D. 1-1 ¶ 9, the Court may have considered the exhibits and reached the ERISA preemption arguments raised by BCBS's motion to dismiss.  See Prouty, 997 F. Supp. 2d at 89; Blay, 716 F. Supp. 2d at 118.  However, in light of the parties' submissions to date, the Court is unable to do so.  Accordingly, the Court denies BCBS's motion to dismiss without prejudice to BCBS raising the issue of ERISA preemption in a motion for summary judgment.

### V.      Conclusion

For the foregoing reasons, the Court DENIES BCBS's motion to dismiss, D. 7.  Given that resolution of the ERISA preemption issue may be dispositive here, see Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4–6 (1st Cir. 1999), the Court ORDERS the following schedule for a motion for summary judgment on the issue of ERISA preemption.  Fact discovery, limited to matters bearing upon this issue, may be conducted through January 31, 2024.  BCBS may file any motion for summary judgment on ERISA preemption by February 28, 2024.  Cannon's opposition to same will be due by March 20, 2024.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge